## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH

| | |
|---|---|
| JAMES RAINES, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>IMPACT NET WORTH SOLUTIONS, et al.,<br><br>        Defendants. | **ORDER and MEMORANDUM DECISION**<br><br>Case No. 2:08-CV-812-CW<br>Member Case No.: 2:09-CV-905 |

Now before the court is Plaintiff David Reber's Motion for Pre-Judgment Writ of

Garnishment (Dkt. No. 33) and Motion for Temporary Restraining Order and Injunction (Dkt.

No. 35) against Defendants EMI Sun Village, Inc., Promotora Xara, S.A., Fred Elliott, Derek

Elliott and Jason Burley (together, the "Elliott Group Defendants"). The Motion for Pre-

Judgment Writ of Garnishment seeks to garnish funds being held by SVJD, LLC at Wells Fargo

Bank. The requested TRO and preliminary injunction would freeze the same funds. A hearing

was held on these motions on July 15, 2009. Justin D. Heideman of Heideman, McKay, Heugly

& Olsen, L.L.C. appeared and argued on behalf of Mr. Reber. Brant C. Hadaway of Diaz, Reus

& Targ appeared and argued on behalf of Defendant Impact Net Worth Solutions. No counsel

appeared on behalf of any other defendant. The court heard and has considered the affidavit and

testimony of Mr. Reber, the declaration of Gregory Clark and the documents received in

evidence. For the reasons stated below, the court GRANTS Mr. Reber's motion for garnishment

and DENIES his motion for a TRO and preliminary injunction.

## PRELIMINARY FINDINGS OF FACT[1]

1.    Near the end of March, 2008, Mr. Reber invested $46,035 in what had been represented to him as an undivided fractional ownership interest in a hotel and condominium project being developed under the auspices of the Elliott Group Defendants.

2.    The investment was governed by the Purchase Agreement for Residential Beneficial Interest in Sun Village Maxim Bungalows, Cofresi, dated March 16, 2008.  The agreement was signed by David J. Reber and an authorized representative of Ocean Palms Real Estate (SVG), Inc.

3.    Several of the Defendants represented to Mr. Reber that this investment was to be used for the development of a hotel/condominium project in the Dominican Republic.

4.    At the beginning of April, 2008, Mr. Reber invested an additional $20,000 in a what he was told was a residence product also being developed in the Dominican Republic under the auspices of the Elliott Group Defendants.

5.    Mr. Reber traveled to the Dominican Republic with his financial advisor in connection with his proposed investments.  At that time and in other discussions, Mr. Reber was told by one or more of the Defendants, among other things, that his money would be used for the development of the hotel/condominium project in the Dominican Republic and that his investment would be like a certificate of deposit, with a fixed rate of return and dividends to be paid on a set schedule.  Mr. Reber understood that under his contract for investment he would be

---

[1] These findings of fact are provisional based on the lower evidentiary standard required at hearings for garnishment and injunctive relief.

entitled on demand to a return of his $20,000 investment should there be a default in making the required payments.

6. Mr. Reber made both of these investments based on information provided to him by agents of Defendant Net Worth Solutions and the Elliott Group Defendants.

7. Mr. Reber stated that Net Worth Solutions agents represented that they had obtained their information from the Elliot Group Defendants.

8. The evidence presented supports that none of the $66,035 Mr. Reber invested went towards the development of the hotel/condominium project in the Dominican Republic. Mr. Reber testified that he has not received any pay outs on the $20,000 investment and that he has not received a deed representing the fractional interest he understood that he would receive for his $46,035.

9. The evidence supports that at the direction of Yessica Ventura, Mr. Reber sent to the Dominican Republic check number 1002 in the amount of $46,035 made payable to EMISVLLC for "Maxim Bungalow." The initials EMISVLLC presumably are for "EMI Sun Village, LLC." The check was deposited in account number 2782171025 held by SVJD, LLC at Wells Fargo Bank in Henderson, Nevada (the "Wells Fargo Account").

10. The evidence further supports that the additional $20,000 from Mr. Reber was wire transferred to the Wells Fargo Account with receipt of the funds confirmed to Ms. Ventura.

11. Mr. Reber testified that representatives of Wells Fargo have verbally confirmed to him that funds remain in the Wells Fargo Account in excess of the $66,035 and an amount to pay a reasonable attorneys fee.

3

12.  No evidence was presented that any of the $66,035 of funds received from Mr. Reber and deposited in the Wells Fargo Account have been withdrawn from the account.

13.  Mr. Reber testified that he has made several demands to have his investment monies returned to him.

14.  Mr. Reber testified that none of the Defendants have refunded Mr. Reber the amounts he invested with the Elliott Group Defendants.  No evidence to the contrary was offered.

15.  Mr. Reber filed the complaint in this action which was consolidated with another action brought by other Plaintiffs against substantially the same Defendants.

16.  Defendants Promotora Xara, S.A., Jason Burley, Derek Elliot and Fred Elliot are all located outside of the United States.  They were served with the complaint in Case No. 09-CV-905 and summons via registered mail on March 11, 2009.  EMI Sun Village, Inc. has not been served with the complaint in this action.

17.  Return of service for that complaint was filed by the clerk of the court for the each of the Elliott Group Defendants except EMI Sun Village, Inc. on April 27, 2009.

18.  To date, none of the Elliott Group Defendants have appeared in this consolidated action.

19.  Counsel for Mr. Reber presented a series of correspondence between plaintiffs' counsel and Bret Anderson of Blackburn & Stoll.  This correspondence leads the court to conclude that Mr. Anderson represents Fred Elliot, Derek Elliott, Jason Burley and Promotora Xara, S.A. in this matter.  As part of the correspondence, Mr. Anderson requested copies of the motion for TRO and acknowledged that the court had informed him that the hearing on the motion for preliminary injunction had been set for July 6, 2009 at 3:30 p.m.  By correspondence

dated June 24, 2009 Mr. Anderson confirmed that he had received copies of the motion for TRO

and in correspondence dated June 25, 2009, Mr. Anderson implied that his clients were

undecided whether they want him to appear at the hearing.

20.   Plaintiffs presented no written evidence of whether Mr. Anderson had been advised

that the hearing had been rescheduled to July 15, after the cases were consolidated.  Counsel

represented to the court, however, that Brett Evanson, one of Mr. Reber's attorneys, has

contacted Mr. Anderson and informed him of the Motion for Temporary Restraining Order and

Motion for Pre-Judgment Writ of Garnishment.

21.   Based on the efforts reflected in the submitted correspondence and other efforts

presented during the hearing on this matter, the court finds that the Elliott Group Defendants had

notice of these proceedings and have chosen not to participate in the hearing on this matter.

22.   Counsel for the Net Worth Defendants offered and the court received in evidence a

Memorandum agreement dated July 14, 2009.  Counsel represented that the Memorandum had

been signed by Frederick C. Elliott, individually and as Authorized Representative of the Elliotts

and Elliott Defendants in separate action pending in the United States District Court in Miami

(the "Memorandum"), by a representative for some plaintiffs in that action, and by the Special

Master appointed in that proceeding.  Among other things, the Elliotts agreed in the

Memorandum that "There will be no deterioration of any assets or encumbrances of assets or

holdings (in any jurisdiction) without prior disclosure and approval of the Special Master and/or

District Court."  Counsel for the Net Worth Defendants represented to the court that the

agreement would apply to the funds in the Wells Fargo Account.

23.   Counsel for Mr. Reber offered and the court received in evidence a Declaration of Gregory Clark that had been offered in the matter of *Hoffman v. EMI Resorts, Inc.*, case nos. 09-20526-CIV- Gold and 09-20657-CIV-Gold.  By declaration, Mr. Clark testified that in 2000 he joined the Elliott Companies and continued to work for them in various positions until he resigned in November 2008.  He held the position of Chief Financial Officer and was involved in the financial aspects of all of the Elliott Group companies including the EMI Sun Village, (Cofresi project).  He also testified that the Elliotts operate under a maze of corporations referred to as the Elliott Group and that the companies were used interchangeably by the Elliotts.

24.   Mr. Clark further testified that funds were taken indiscriminately from one of the several companies to pay the obligations of another as needed.  He testified that the Elliott Group had raised millions of dollars to invest in the Sun Village project, but the rooms in the complex remained unfurnished and were uninhabitable at the time of his resignation.

25.   Mr. Clark testified that the Sun Village Cofresi resort was operating at loss and that the Elliott Group was funding losses by sale of timeshares and residence products to investors.

26.   Mr. Clark testified that the Elliott Group was funding payments to earlier investors from the proceeds of sales to later investors.

27.   Although Mr. Clark did not refer to SVJD, LLC in his testimony, the testimony of Mr. Reber and the deposit of the $66,035, together with the documentation and correspondence is sufficient to find that SVJD, LLC is one of the maze of companies used by the Elliott Group Defendants interchangeably with the other accounts controlled by the Elliott Group Defendants and that Gregory Clark is one of the managers of SVJD, LLC, and that SVJD, LLC is controlled by the Elliott Group Defendants.

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 64(a), "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Rule 64(a) specifically avails plaintiffs of the right to move under Utah Rules of Civil Procedure 64A and 64D which permit plaintiffs to garnish funds belonging to civil defendants.

Mr. Reber has presented sufficient evidence to satisfy the required elements for a Pre-Judgment Writ of Garnishment under Utah Rules 64A and 64D.  Accordingly, Mr. Reber is entitled to garnish monies held the Wells Fargo Account under the terms and conditions that follow.  More specifically, the court concludes that, with respect to Utah Rule 64A:

1)      *The property Mr. Reber seeks to garnish is not earnings and is not exempt from execution.*  The contractual agreements outlining the terms of the investments made by Mr. Reber demonstrate that the investment Mr. Reber placed with the Elliott Group Defendants is not earnings and is not exempt from execution.

2)      *That Mr. Reber's Writ of Garnishment is not sought to hinder, delay or defraud creditors of the Defendants.*  No evidence supports a finding that Mr. Reber seeks this writ of garnishment to hinder, delay or defraud creditors of the Elliot Group Defendants.  Although other creditors of the Elliott Group may have claims to the monies held in the Wells Fargo Account, the writ of garnishment preserves their right to assert claims against any such funds.

3)      *That Mr. Reber has presented sufficient evidence to demonstrate a substantial likelihood that he will prevail on the underlying merits of his claims against the Elliott Group Defendants.*  On the basis of the evidence presented, it is substantially likely that Mr. Reber will

prevail on one or more of his claims against the Elliott Group Defendants.  The testimony submitted by declaration of Gregory Clark, a former officer of the Elliott Group, supports a finding that the Elliott Group Defendants took Mr. Reber's money with no intent to use it as represented or to otherwise defraud Mr. Reber by transferring the funds into the Wells Fargo Account rather than using the funds for the purposes represented.

4)      *That the Elliott Group Defendants have fraudulently incurred the obligation that is the subject of this action.*  The testimony of Mr. Reber, the documents received in evidence and the testimony of Gregory Clark support the conclusion that the Elliott Group Defendants obtained Mr. Reber's money through fraud and deceit.

5)      *That Mr. Reber has an ownership or special interest in the subject property.*  The testimony of Mr. Reber, the documents received in evidence and the testimony of Gregory Clark support that the $66,035 invested by Mr. Reber is traced into the Wells Fargo Account, that sufficient funds remain in the account to satisfy the writ and no evidence was presented to show that Mr. Reber's funds were withdrawn from the account.

6)      *There exists probable cause of losing the remedy unless this court issues this writ of garnishment.*  The testimony of Mr. Reber, the documents received in evidence and the testimony of Gregory Clark support a finding that the Elliott Group Defendants have created a web of domestic and foreign corporations used to indiscriminately disburse funds without regard to the purpose for which they were invested and to obscure investors from tracing funds and determining whether such funds were used for the purposes represented, all for the purpose of preventing defrauded investors from recouping their investment funds.

The court further concludes, pursuant to Utah Rule 64D, that:

1)      *The Elliott Group Defendants are indebted to Mr. Reber.*  Mr. Reber testified that he made demand for delivery of the deed of his undivided fractional interest or return of the funds invested and that the demand has been ignored.  Mr. Reber has not received the payments or deed promised in connection with his investment with the  Elliott Group Defendants. Moreover, there is no evidence that Mr. Reber's investment has been used for the purposes for which it was represented to him that they would be used.  Accordingly, the Elliott Group Defendants are likely indebted to Mr. Reber in the amount of his investment with them.

2)      *That this action is based upon a contract, and is against a defendant who is not a resident of this state, and against a foreign corporation not qualified to do business in the State of Utah.*  Mr. Reber's claim is based upon the oral representations and written contracts governing his investments.  All of the Elliott Group Defendants are located outside of the State of Utah and there is no evidence that Promotora Xara, S.A. is qualified to do business in Utah.

3)      *That the payment of this claim has not been secured by a lien on property in this state.*  There is no evidence that Mr. Reber's claim is secured by a lien against any property in the State of Utah.

4)      *That the Elliott Group Defendants control the property.*  The evidence submitted supports a finding that Mr. Reber $66,035 was deposited in the Wells Fargo Account held in the name of SVJD, LLC, that SVJD, LLC is controlled by the Elliott Group Defendants, that Ms. Ventura was introduced to Mr. Reber as a Net Worth employee who worked closely with the Elliott Group, and that Ms. Ventura directed Mr. Reber to send his funds to the Dominican Republic, but deposited the funds in the Wells Fargo Account of SVJD, LLC in Henderson, Nevada.

5) *That Mr. Reber has attached the garnishee fee established by Utah Code Section 78A-2-216.* Mr. Reber is hereby ordered to pay $10 to Wells Fargo Bank, which is the fee established by Utah Code Section 78A-2-216. Mr. Reber shall attach this payment with this Order when he serves the Order on Wells Fargo Bank.

In addition to the above, the court is satisfied that all other requirements set forth in Utah Rules 64A and 64D have been met. Specifically, Mr. Reber's affidavit satisfies Utah Rule 64A(d). The correspondence received in evidence demonstrates that counsel for Mr. Reber advised counsel for the Elliott Group Defendants of the motions and proceedings and counsel for the Elliott Group Defendants acknowledged receipt of the moving papers, but did not appear at the hearing. Mr. Reber has included the form of interrogatories he will serve on Wells Fargo Bank pursuant to Utah Rule 64D(e).

The court declines to grant Mr. Reber's motion to continue the previously-granted TRO or for a preliminary injunction. Mr. Reber has not met the requirements for the relief sought by those motions. In particular, Mr. Reber failed to show that he will be irreparably harmed if injunctive relief is not granted.

The court rejects the arguments of the Net Worth Defendants that the court should not issue the writ because of the stipulation between the Plaintiffs and the Net Worth Defendants to submit the dispute to arbitration. The court received in evidence the Stipulation for Arbitration and the Addendum to the Stipulation for Arbitration signed by counsel for Mr. Reber and counsel for some, but not all of the Defendants. The Net Worth Defendants, who were signatories to the agreement, argued that Mr. Reber's proper remedy is before an arbitration tribunal and further pointed out that none of the Plaintiffs has initiated an arbitration. The Elliott Group Defendants,

however, are not parties to the stipulations to arbitrate and there is no evidence that the Elliott

Group Defendants or SVJD, LLC would be bound by any action taken by an arbitration tribunal.

For these reasons the court declines to defer to any arbitration proceedings on these motions.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    A Pre-Judgment Writ of Garnishment is hereby issued against bank account number

2782171025 held in the name of SVJD, LLC at Wells Fargo Bank in the amount of EIGHTY

ONE THOUSAND THIRTY FIVE DOLLARS ($81,035) (the "Funds").

2.    The Funds are made up of the $66,035 Mr. Reber invested in the Elliott Group

Defendants' condominium and development project traced to the Wells Fargo Account and an

additional $15,000 to be available for expenses including a reasonable attorneys fee incurred by

Mr. Reber. The court makes no finding or order that Mr. Reber is entitled to such expenses,

including his attorneys fees, or what the amount of a reasonable attorneys fee would be.

3.    The court orders Wells Fargo Bank to transmit EIGHTY ONE THOUSAND

THIRTY FIVE DOLLARS ($81,035) out of account number 278271025, held in the name of

SVJD, LLC, to Town and Country Bank, account number 700886, c/o Heideman, McKay,

Heugly & Olsen, LLC, Provo Savings Account, 1464 South 1490 East Circle, St. George, UT

84790, phone number (435) 673-1150 to be held in trust by Heideman, McKay, Heugly & Olsen

as trustee for the purpose of preserving the Funds as set forth in this order (the "Trust Account").

4.    Within seven days of being served with this Order, Wells Fargo Bank is instructed

to:

a.    Answer Mr. Reber's interrogatories under oath or affirmation;

b.    Serve the answers on Mr. Reber;

11

    c.      Serve this Order, answers, notice of exemptions and two copies of the reply form upon the Elliot Group Defendants and any other person shown by the records of Wells Fargo Bank to have an interest in the property; and

    d.      File the answers with the clerk of court.

Wells Fargo may amend answers to interrogatories to correct errors to reflect a change in circumstances by serving and filing the amended answers in the same manner as the original answers.

5.    The Trust Account shall bear interest at the rate presently in effect for the Trust Account, and the interest shall be maintained in the Trust Account.

6.    As trustee, the law firm of Heideman, McKay, Heugly & Olsen, LLC shall be charged with maintaining the Funds in the Trust Account and to provide written reports to all interested parties, including the Elliott Group Defendants and all other parties to this action, no less often than every THIRTY (30) days.  Such report shall include the amount in the Trust Account, including the amount of principal and accrued interest.

7.    The Funds in the Trust Account shall not be released under any circumstances except by order of this court.

8.    Any person claiming an interest in the Funds in the Trust Account, whether a party to this consolidated action or not, may petition this court to have the Funds released to him or her.

9.    Mr. Reber's counsel shall provide notice to all Defendants of the establishment of the Trust Account and a certified copy of this order.  Mr. Reber's counsel shall also provide a

copy of this order to any party who asserts in writing an interest in the Funds in the Trust Account.

10.    In any petition or motion for release of funds from the Trust Account, notice shall be given in writing to all Defendants in the consolidated action and to any additional parties who assert in writing that they claim an interest in the Funds in the Trust Account.  Such notice shall be as provided by the Federal Rules of Civil Procedure for motions or other relief requested.

SO ORDERED this 21st day of July, 2009.

_____
Honorable Clark Waddoups
United States District Judge